[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Warrensville Hts. City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* Slip Opinion No. 2015-Ohio-78.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-78

BOARD OF EDUCATION OF THE WARRENSVILLE HEIGHTS CITY SCHOOL DISTRICT, APPELLANT, *v.* CUYAHOGA COUNTY BOARD OF REVISION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Warrensville Hts. City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-78.]**

*Taxation—Real-property valuation—R.C. 5713.04—Amount received for real property sold at auction or forced sale does not establish its value.*

(No. 2014-0516—Submitted May 5, 2015—Decided January 13, 2016.)

APPEAL from the Board of Tax Appeals, Nos. 2010-1715, 2012-1748, and 2012-1749.

_____

**Per Curiam**.

{¶ 1} The Board of Education of Warrensville Heights City School District appeals from a decision of the Board of Tax Appeals ("BTA") finding the tax year 2010 value of Thistledown Racetrack in Cuyahoga County to be $13,800,000. The

BTA determined that the purchase of the racetrack for $43,000,000 at a bankruptcy sale six months after the tax-lien date did not establish the true value of the property, because "sales conducted under supervision of a court order are forced sales which are not indicative of true value." BTA Nos. 2012-1715, 2012-1748, and 2012-1749, 2014 WL 1155691, at *2 (Mar. 6, 2014).

{¶ 2} The school board maintains that Thistledown Racetrack sold in a recent arm's length transaction and that the $43,000,000 sales price establishes the true value of the property.

{¶ 3} In this case, the BTA reasonably and lawfully applied R.C. 5713.04, which states that the price received for real property at auction or forced sale does not establish its value, and the evidence presented to the BTA supports its finding that the true value of Thistledown Racetrack was $13,800,000 as of the tax-lien date.

{¶ 4} For these reasons, we affirm the decision of the BTA.

**Facts**

*The property and its 2010 sale in bankruptcy*

{¶ 5} The subject property, parcel Nos. 771-03-001 and 761-18-001, is Thistledown Racetrack, a thoroughbred-racing facility located in Cuyahoga County that is home to the Ohio Derby. Thistledown includes 128 acres of land improved by a one-mile racetrack, an eight-story grandstand, and numerous barns and support structures.

{¶ 6} In 2009, the year preceding the tax-lien date, New Thistledown, L.L.C., owned Thistledown Racetrack, and its parent company, Magna Entertainment Corporation, petitioned for Chapter 11 bankruptcy relief and received authority to sell the racetrack at auction.

{¶ 7} Magna Entertainment received three qualifying bids; Harrah's Ohio Acquisition Company, L.L.C., submitted the best and highest offer, and in September 2009, it agreed to purchase Thistledown for $89,500,000. The sales

agreement, however, provided for a closing purchase price of $42,000,000, a contingent payment of $42,500,000 due if Harrah's earned at least $1.00 from the operation of video lottery terminals ("VLTs") at the racetrack, and a contingent payment of $5,000,000 payable if the voters of Ohio rejected Issue 3 (which would allow four casinos in Ohio) at the November 2009 election. The sale was also contingent on Harrah's acquiring Thistledown's racing license and approval to operate VLTs at the racetrack. The sale never closed because the conditions were not satisfied.

{¶ 8} On May 25, 2010, Magna Entertainment held a second auction, and Harrah's again submitted the winning bid to purchase Thistledown. The contract stated that in exchange for $43,000,000, Harrah's would assume ownership of the real property as well as equipment, inventory, deposits, advertising and marketing materials, transferable permits, intellectual property rights, goodwill, and insurance proceeds, among other things. Magna Entertainment also agreed to "submit to the [racing commission] a preliminary request to transfer all Licenses and Racing Approvals." The sale was contingent on Harrah's ability to obtain Thistledown's racing license from the racing commission but had no conditions related to VLTs. The bankruptcy court approved the sale on June 17, 2010, and Harrah's filed the deed on July 28, 2010, after it received the racing license.

*Valuation and board of revision proceedings*

{¶ 9} For tax year 2010, the Cuyahoga County fiscal officer assigned a total value of $14,264,000 to the parcels comprising Thistledown. The school board filed a complaint with the board of revision ("BOR"), seeking an increase in valuation to $89,500,000, the initial sale price Harrah's had bid for Thistledown. Harrah's filed counter-complaints seeking a decrease to $12,000,000, and it subsequently amended the counter-complaints to request a reduction to $5,500,000.

{¶ 10} At a hearing, the school board introduced evidence of the purchase agreement between Harrah's and Magna Entertainment as well as the bankruptcy

court's order authorizing the sale, which stated that $43,000,000 "constitutes reasonably equivalent value and fair consideration for the Purchased Assets." Harrah's responded with the testimony of Kathleen Floyd, its property-and-sales-tax director, who explained that the 2010 sale included real property as well as other assets, and she emphasized that Harrah's bought Thistledown to obtain its racing license in the hopes of operating VLTs, which were permitted only at racetracks. In addition, Carla Bishop, a property-tax consultant, testified that she could not value the property using the income, sales-comparison, and cost approaches; she therefore compared Thistledown to five other Ohio racetracks that had been assessed, concluded that the real estate had little contributory value to the overall purchase, and valued the real property at $5,500,000.

{¶ 11} The BOR retained the fiscal officer's initial valuation of $14,264,200.

*BTA proceedings*

{¶ 12} The school board appealed to the BTA, requesting an increase to $43,000,000, the price Harrah's ultimately paid for Thistledown, and Harrah's requested a decrease to $13,800,000. The school board relied on the 2010 sale and argued that the $43,000,000 sale price reflected the value of the real property. In response, Floyd, the property-and-sales-tax director for Harrah's, reiterated her prior testimony that the sale price reflected the purchase of other assets in addition to real property and that Harrah's bought Thistledown hoping to obtain a license to operate VLTs at the racetrack. Harrah's also submitted a new appraisal and testimony from David Sangree, an appraiser, who testified that the income-capitalization approach was not effective for valuing properties like Thistledown that had been losing money, and he therefore conducted sales-comparison and cost approaches to valuation. He testified that 65 percent of the $43,000,000 purchase price—or $27,950,000—could be attributed to obtaining Thistledown's racing license in the hope of operating VLTs at the racetrack, and he opined that the

furniture, fixtures, and equipment were worth approximately $1,200,000, and after rounding valued the real property at $13,800,000.

{¶ 13} The BTA rejected the 2010 sale price as evidence of value, explaining that "[a]lthough it is clear that the subject property sold recent to [the] tax lien date, we do not find the sale to have been arm's-length because it was subject to the approval of a bankruptcy court."  2014 WL 1155691 at *2.  It therefore considered the appraisal evidence, found Sangree's opinion to be "reasonable and well supported," and valued the real property at $13,800,000.  *Id.* at *2-3.

{¶ 14} On appeal to this court, the school board presents three propositions of law:

> Proposition of law No. 1: A recent arm's length sale of property is the best evidence of value and must be accepted for ad valorem taxation.
> Proposition of law No. 2: It has not been established that an allocation of the purchase price was made to property other than real estate.
> Proposition of law No. 3: The appraisal report should not be considered due to the recent arm's length sale.

{¶ 15} Ultimately, the school board asks us to "determine the value of the subject property to be $43,000,000 for the 2010 tax year or in the alternative remand the case back to the BTA with instructions to consider the $43,000,000 sale in its determination of value."

**Law and Analysis**

{¶ 16} Pursuant to R.C. 5717.04, this court reviews a decision of the BTA to determine whether it is reasonable and lawful.  In our review, we defer to the

BTA's factual findings if they are supported by reliable and probative evidence in the record. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. And as we indicated in *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, ¶ 13, a decision of the BTA will be affirmed if it correctly applies the law.

{¶ 17} During the tax year at issue, former R.C. 5713.03 set forth how real estate is to be valued for tax purposes:

> In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor shall consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes.

Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, 2665, 2722. We construed this statute in *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, and explained that "when the property has been the subject of a recent arm's-length sale between a willing seller and a willing buyer, the sale price of the property shall be 'the true value for taxation purposes.' " *Id*. at ¶ 13, quoting R.C. 5713.03. As the court noted in *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13, "at the very heart of *Berea* lies the rejection of appraisal evidence of the value of the property whenever a recent, arm's-length sale price has been offered as evidence of value."

{¶ 18} R.C. 5713.04, however, provides that "[t]he price for which such real property would sell at auction or forced sale shall not be taken as the criterion of its value." We have explained that "this statutory pronouncement codifies the basic

proposition that a sale must be voluntary from the standpoint of both seller and buyer in order to qualify as an arm's-length transaction." *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, ¶ 19.

{¶ 19} For this reason, in *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 141 Ohio St.3d 243, 2014-Ohio-4723, 23 N.E.3d 1086, we held that if the underlying transaction is an auction or forced sale, "the proponent of the sale price bears the burden to prove that the sale was nevertheless an arm's-length transaction between typically motivated parties and should therefore be regarded as the best evidence of the property's value." *Id.* at ¶ 43.

{¶ 20} The BTA reasonably and lawfully determined that the sale price did not establish the property's true value for two reasons:

{¶ 21} First, Thistledown Racetrack sold at auction. For purposes of R.C. 5713.04, the term "auction" means " '[a] public sale of property to the highest bidder,' " *Olentangy Local Schools* at ¶ 30, quoting *Webster's Third New International Dictionary* 142 (1993) and *Black's Law Dictionary* 149 (9th Ed.2009), and it includes "both voluntary and involuntary auctions," *id.* at ¶ 27. Here, Magna Entertainment elicited and received qualified bids, Hannah's submitted the highest bid, and the bankruptcy court found that "the bidding process afforded a full and fair opportunity for any entity to make a higher or otherwise better offer" and therefore established the purchase price. Pursuant to R.C. 5713.04, the sale price for Thistledown obtained at the auction does not establish the true value of the property.

{¶ 22} Second, reliable and probative evidence in the record supports the finding that Thistledown sold at a forced sale within the meaning of R.C. 5713.04. A "forced sale" is a "hurried sale by a debtor because of financial hardship or a creditor's action." *Black's Law Dictionary* 1538 (10th Ed.2014). We have indicated that a sale does not establish a property's value when it "occurs under the

compulsion that the property be liquidated for the benefit of creditors," *Cincinnati School Dist.*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, ¶ 3, and "[a] sale conducted under duress is characterized by 'compelling business circumstances * * * clearly sufficient to establish that a recent sale of property was neither arm's-length in nature nor representative of true value,' " *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of* Revision, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 16, quoting *Lakeside Ave. Ltd. Partnership v. Cuyahoga Cty. Bd. of Revision*, 75 Ohio St.3d 540, 548, 664 N.E.2d 913 (1996). The school board acknowledges that "[t]he economic problems faced by a debtor in both a chapter 7 and chapter 11 bankruptcy may cause the debtor to accept less than the full value of its property."

{¶ 23} Harrah's bought the racetrack at a bankruptcy sale conducted pursuant to 11 U.S.C. 363(b), which authorizes sale of property of the bankruptcy estate "other than in the ordinary course of business." The bankruptcy court supervising the sale found "compelling circumstances" to consummate the sale because "there is substantial risk of depreciation of the value of Purchased Assets if the sale is not consummated quickly." Further, the transaction was not between typically motivated parties—the bankruptcy court approved the sale after finding that time was of the essence in order to maximize the value of the bankruptcy estate's assets and that it was in the best interests of Magna Entertainment *and its creditors and other parties in interest*. Thus, sufficient evidence shows that the bankruptcy sale occurred at least in part to liquidate assets for the benefit of Magna Entertainment's creditors.

{¶ 24} Accordingly, the BTA acted reasonably and lawfully in determining that the 2010 sale price does not establish the true value of Thistledown Racetrack, and it therefore properly considered appraisal evidence in valuing the property. Because the school board challenged the BOR's valuation, it had the burden of going forward with evidence showing its right to any increase in valuation. *Dublin*

8

*City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 193, 2013-Ohio-4543, 11 N.E.3d 206, ¶ 16.  However, the school board presented nothing apart from the 2010 sale and the sale order as establishing the value of the real property.

{¶ 25} In contrast, Harrah's submitted Sangree's appraisal to prove that the real estate had a fair market value of $13,800,000.  Based on comparisons he made with sales of other racetracks, Sangree indicated that $27,950,000 of the $43,000,000 purchase price could be attributed to obtaining Thistledown's racing license in the hope of operating VLTs at the racetrack, opined that the furniture, fixtures, and equipment were worth approximately $1,200,000, and, after rounding, valued the property at $13,800,000.  This testimony corroborated other evidence showing that Harrah's bought Thistledown in order to acquire its racing license and operate VLTs, as well as the recitals in the purchase agreement transferring both real property and other assets and requiring transfer of the racing license as a condition of the sale.

### Conclusion

{¶ 26} Accordingly, the BTA reasonably and lawfully determined that the 2010 sale did not establish the true value of Thistledown Racetrack, and the evidence presented supports its finding that Thistledown Racetrack was worth $13,800,000 as of the tax-lien date.  We therefore affirm the decision of the BTA.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Kolick & Kondzer, Thomas A. Kondzer, and Matthew Marsalka, for appellant.

Ice Miller, L.L.P., Paul M. Jones Jr., and Alan G. Starkoff, for appellee Harrah's Ohio Acquisition Company, L.L.C.

_____