O’Donnell, J.,
dissenting.
{¶ 30} Respectfully, I dissent.
{¶ 31} R.C. 5709.12(B) states that “[rjeal and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation * * *.” And pursuant to R.C. 5709.121(A)(2), real property belonging to a charitable institution “shall be considered as used exclusively for charitable or public purposes by such institution” if it is “made available under the direction or control of such institution * * * for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit.” We have stated that “[s]o long as an institution is operated without any view to profit and exclusively for a charitable purpose, it is a charitable institution.” Herb Soc. of Am., Inc. v. Tracy, 71 Ohio St.3d 374, 376, 643 N.E.2d 1132 (1994).
{¶ 32} Although the General Assembly has not defined what activities constitute “charitable purposes” for purposes of R.C. Chapter 5709, we explained in Bethesda Healthcare, Inc. v. Wilkins, 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142:
“In the absence of a legislative definition, ‘charity,’ in the legal sense, is the attempt in good faith, spiritually, physically, intellectually, socially and economically to advance and benefit mankind in general, or those in need of advancement and benefit in particular, without regard to their ability to supply that need from other sources, and without hope or expectation, if not with positive abnegation, of gain or profit by the donor or by the instrumentality of the charity.”
*51 (Emphasis added.) Id. at ¶ 32, quoting Planned Parenthood Assn. v. Tax Commr., 5 Ohio St.2d 117, 214 N.E.2d 222 (1966), paragraph one of the syllabus.
{¶ 33} Applying that definition, we have recognized that advancing religion is a charitable purpose. See, e.g., True Christianity Evangelism v. Zaino, 91 Ohio St.3d 117, 120, 742 N.E.2d 638 (2001); Am. Commt. of Rabbinical College of Telshe, Inc., v. Bd. of Tax Appeals, 156 Ohio St. 376, 378, 102 N.E.2d 589 (1951).
{¶ 34} In Rabbinical College, we considered the predecessor statute to R.C. 5709.12(B) — Section 5353 of the General Code — which stated: “Real and tangible personal property belonging to institutions used exclusively for charitable purposes, shall be exempt from taxation.” 121 Ohio Laws 241, 242. We observed that the statute reflected a change from the prior law, because “the words ‘institutions of purely public charity’ have now been replaced by the words ‘institutions used exclusively for charitable purposes,’ ” and we concluded that “it is no longer necessary that an institution used exclusively for the lawful advancement of education and of religion be open generally to the public in order to have tax exemption of property owned and used by it exclusively for lawful educational or religious purposes.” (Emphasis added.) Rabbinical College at 378.
{¶ 35} We therefore rejected the proposition that the charitable use exemption did not apply to an institution’s property that was “ ‘operated for those of the Jewish faith and race’ and was not ‘open to the public.’ ” Id. at 378. Thus, Ohio does not mandate that property be open generally to the public in order to be exempt from taxation. This has been the law in Ohio for more than six decades.
{¶ 36} More recently, in Herb Soc. of Am., 71 Ohio St.3d at 376, 643 N.E.2d 1132, we rejected the view that an organization is not charitable “because it restricts membership to selected individuals.” Following Rabbinical College, we explained that a charitable institution “need not be open generally to the public if it promotes the lawful advancement of the charitable purpose.” Id.
{¶ 37} Notwithstanding long-standing precedent from this court, the majority concludes that the core activities of Innkeeper Ministries, Inc., are not charitable because its property is not open to the public generally. This analysis, however, is not only inconsistent with the General Assembly’s decision to broaden the charitable use exemption beyond “public charities” to include both “charitable institutions” and property “used exclusively for charitable purposes,” but also is contrary to the distinction we previously acknowledged in Herb Soc. of Am. and Rabbinical College. The change in statutory language reflects the legislative intent that a charitable organization is not required to be open to the public in general but rather can seek to benefit discrete groups in particular based on a specific need for charity.
*52 {¶ 38} In fact, making charity available only to a specific group may be essential to the core activity of the charitable institution, or it may be unavoidable due to the charity’s lack of resources. A decision by the Girl Scouts of America, for example, to restrict membership to females would not lead us to question its status as a charitable institution, see Girl Scouts-Great Trail Council v. Levin, 113 Ohio St.3d 24, 2007-Ohio-972, 862 N.E.2d 493, ¶ 20; nor does a food pantry such as the Mid-Ohio Foodbank lose its charitable exemption because it limits its charity to the poor and needy rather than opening its doors to the general public.
{¶ 39} The majority reasons that residential use of property is necessarily a private, noncharitable use. This view, however, overlooks the fact that there are residential uses of property that are unquestionably charitable. For instance, homeless shelters and battered women shelters such as those run by the Friends of the Homeless in Columbus and the City Mission in Cleveland have received charitable exemptions notwithstanding the residential use of the property. Offering an individual a safe place to stay is an attempt to advance and benefit those in need of advancement and benefit and therefore is charity as defined by our decision in Bethesda Healthcare, 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142, at ¶ 32.
{¶ 40} Thus, reliance on cases involving subsidized low-cost housing or residences provided for the personal use of employees and their families is misplaced. Those cases are factually distinguishable, because those receiving a subsidy or housing as a benefit of employment are in effect paying a share of the rent for the private use of the property, and the exclusive use of the property is not charitable. See W. Res. Academy v. Bd. of Tax Appeals, 153 Ohio St. 133, 136, 91 N.E.2d 497 (1950) (explaining that property used for residences of faculty of a nonprofit academy was not tax exempt, because the housing was, in effect, provided in lieu of salary). But here, the property is used exclusively for a charitable purpose, and its incidental use as a residence for its caretakers serves to facilitate that purpose.
{¶ 41} The accommodations for Innkeeper Ministries’ guests are provided at no cost — thereby meeting one part of the test for charity that we articulated in Bethesda Healthcare, i.e., that the service is provided without expectation of gain or profit, and the residential use of the property is charitable.
{¶ 42} Moreover, in this case, the BTA noted that the charitable mission of Innkeeper Ministries is to advance religion by offering a place of “Sabbath rest” for the physical and spiritual renewal of church leaders through personal worship, prayer, meditation, reflection, and Bible study at no cost to guests and participants. BTA No. 2010-2803, 2014 Ohio Tax LEXIS 1305, *4-5 (Feb. 28, 2014). The BTA credited Innkeeper Ministries’ belief that “ ‘Sabbath rest is most effectively achieved in a reclusive atmosphere such as that provided by Innkeep *53 er’s 71 acres located in a remote rural setting.’ ” Id. at *5, quoting Innkeeper Ministries’ brief. Sabbath rest cannot be achieved by opening the property to the general public or to those not in need of Sabbath rest. Thus, the fact that Innkeeper Ministries offers its facilities to church leaders is not indicative of a private use, but rather advances its goal of providing “ ‘services that encourage, support and edify Christian leadership, weary and, at times, wounded from their godly pursuits.’ ” Id. at *4-5, quoting the statutory transcript.
{¶ 43} The majority confuses the core use of the property — the mission to advance religion by offering a place for Sabbath rest — with its incidental use as a residence for the caretakers, the Hartensteins. Providing a place for Sabbath rest necessarily includes giving the guests a place to rest and sleep, which is the primary use of the property, and therefore, having the Hartensteins reside on site serves Innkeeper’s core purposes, because they cook meals for all guests, provide counseling, maintain the premises, and donate their time and energy to ensure that residents can achieve physical and spiritual renewal. More than 11,000 people have come to Innkeeper Ministries seeking Sabbath rest; the mission is a 24 hour a day, seven day a week ministry to ensure the opportunity for rest and spiritual renewal of the guests, and the Hartensteins’ residence on the premises is incidental to that mission.
{¶ 44} In my view, this issue is enlightened by Cincinnati Nature Ctr. Assn. v. Bd. of Tax Appeals, 48 Ohio St.2d 122, 357 N.E.2d 381 (1976), where we held that providing naturalists housing on property used as a nature center was incidental to the institution’s overriding charitable purposes and therefore did not preclude the property from being tax exempt. In that case, employees lived on site to prevent damage to the property. But while allowing employees to live at a nature center that is closed to visitors after hours is only incidental to its charitable purpose of providing educational and nature experiences when it is open, the Hartensteins’ residence on the property is not only incidental to Innkeeper’s core purpose of advancing religion but also is essential to its purpose, because the Hartensteins tend to the needs of those seeking Sabbath rest, and unlike the nature center, Innkeeper is never closed.
{¶ 45} Our easelaw has recognized that property is “used exclusively” for charitable purposes if the “primary use” is charitable. Girl Scouts-Great Trail Council, 113 Ohio St.3d 24, 2007-Ohio-972, 862 N.E.2d 493, at ¶ 19, citing True Christianity Evangelism, 91 Ohio St.3d at 120, 742 N.E.2d 638, and Moraine Hts. Baptist Church v. Kinney, 12 Ohio St.3d 134, 135, 465 N.E.2d 1281 (1984). And whether property is used for charitable purposes is a question of fact to be decided by the BTA, not this court. See Rural Health Collaborative of S. Ohio, Inc. v. Testa, 145 Ohio St.3d 430, 2016-Ohio-508, 50 N.E.3d 486, ¶ 24.
*54 Jay C. Bennett, for appellee.
Michael DeWine, Attorney General, and David D. Ebersole and Barton Hubbard, Assistant Attorneys General, for appellant.
{¶ 46} Although the majority recognizes that the property includes guest rooms, a chapel, and a prayer walk and does not dispute that the property serves spiritual objectives without a view to profit, it nonetheless substitutes its judgment for that of the BTA, disregarding the BTA’s factual finding that “providing a place of respite for the physical and spiritual renewal of Christian leaders * * * fall[s] within the definition of charity.” 2014 Ohio Tax LEXIS 1305, at *6-7. And in doing so, it also trivializes the value of Sabbath rest by suggesting that the property is in essence a place of recreation because recreational facilities are available for guests. In fact, Innkeeper Ministries provides not only recreation, but also spiritual opportunities for its guests. This is in keeping with our explanation of charity in Bethesda Healthcare, 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142, at ¶ 32 — the attempt in good faith spiritually and physically to advance and benefit those in need of advancement and benefit without expectation of gain or profit. By providing both religious and athletic facilities for its guests, Innkeeper Ministries meets our definition of charity.
{¶ 47} Pursuant to R.C. 5717.04, our role in reviewing the BTA is to determine whether its decisions are reasonable and lawful. As we acknowledged in Health-South Corp. v. Levin, 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, “we do not sit as a ‘super BTA,’ ” id. at ¶ 35, but rather “we defer to the BTA’s factual findings if they are supported by reliable and probative evidence in the record,” Warrensville Hts. City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision, 145 Ohio St.3d 115, 2016-Ohio-78, 47 N.E.3d 144, ¶ 16. The BTA in this case found that Innkeeper Ministries is a charitable institution and that its property is primarily used for charitable purposes and, therefore, it is exempt from real property taxes. In my view, reliable and probative evidence in the record supports these findings. Accordingly, I dissent and would affirm the sound decision of the BTA.
Kennedy and French, JJ., concur in the foregoing opinion.