[Cite as *Thistledown Racetrack, L.L.C. v Cuyahoga Cty. Bd. of Revision*, 2021-Ohio-2511.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

THISTLEDOWN RACETRACK
L.L.C., ET AL.,                                :

         Plaintiffs-Appellees,                :

                                                  :         No. 109469

         v.

                                                  :

CUYAHOGA COUNTY BOARD
OF REVISION, ET AL.,                       :

         Defendants-Appellants.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 22, 2021

---

Civil Appeal from the Ohio Board of Tax Appeals
Case Nos. 2017-635, 2017-788, and 2017-790

---

### *Appearances:*

Jones Pyatt Law, L.L.C., and Paul M. Jones Jr., *for appellee.*

The Law Office of Thomas A. Kondzer, Thomas A. Kondzer, and Joseph A. Volpe, *for appellant.*

MARY J. BOYLE, A.J.:

{¶ 1} Defendant-appellant, Warrensville Heights City School District Board of Education ("BOE"), appeals from the January 6, 2020 decision of the Ohio

Board of Tax Appeals ("BTA") regarding the value of certain property for the tax years 2014 and 2015. Specifically, the BTA found the property's value for tax year 2014 to be $27 million, and the value for tax year 2015 to be $25.2 million. The BOE raises twelve assignments of error for our review:

1. The Board of Tax Appeals acted contrary to Ohio law, acted unreasonably, abused its discretion and made factual findings without evidentiary support in the record when it concluded that the appraisal report and income capitalization approach utilized by the board of education's appraisers, Mr. Douglas F. Bovard and Mr. Daniel L. McCown, MAI, to arrive at their opinion of value for the real estate for tax years 2014 and 2015, included "business value" and not just the "realty value" of the subject property and then rejected the appraisers' value in its entirety as legally flawed.

2. The Board of Tax Appeals acted contrary to Ohio law, acted unreasonably, abused its discretion and made factual findings without evidentiary support in the record when it held, contrary to established appraisal practice and the reality of the gaming industry, that the income capitalization approach utilized by the board of education's appraisers valued not only the real estate value of the subject property for tax years 2014 and 2015, but also included a business value.

3. The Board of Tax Appeals acted contrary to Ohio law, acted unreasonably, abused its discretion and made factual findings without evidentiary support in the record when it determined, contrary to the appraisal evidence that was presented by both the property owner and the board of education, that the cost approach of valuation used by both appraisers to determine the value of the real estate for tax years 2014 and 2015 is "of little value given the age of the improvements on the property."

4. The Board of Tax Appeals acted contrary to Ohio law, acted unreasonably, abused its discretion and made factual findings without evidentiary support in the record when it determined that the cost approach was of "little value given the age of the improvements on the property" with respect to the value of the real estate for tax years 2014 and 2015, but did not explain the basis for this particular determination.

5. The Board of Tax Appeals acted contrary to Ohio law, acted unreasonably, abused its discretion and made factual findings without evidentiary support in the record when it valued the subject real estate on the basis of the property owner's appraisals for tax years 2014 and 2015, which were not appraisals of the fee simple interest in the real estate but instead were appraisals of the business activity that was conducted on the real estate.

6. Contrary to its obligations under Ohio law to explain the basis for its findings, the Board of Tax Appeals committed reversible error when it valued the Thistledown real estate on the basis of the property owner's appraisal evidence for tax years 2014 and 2015 but utterly failed to explain the basis for its decision to ignore the fundamental flaws in the property owner's appraisals, including but not limited to the following: a.) the appraiser's valuation of the Thistledown business rather than the Thistledown real estate; b.) the appraiser's lack of qualifications to perform such a going-concern valuation of the property; c.) the appraiser's reliance on erroneous acreage information in its comparable land sales, which then resulted in erroneous values, all of which shows a lack of reliability and credibility in the reports; d.) the appraiser's use of an improper capitalization rate; e.) the appraiser's reliance on unreliable sources of information to value the real estate, furniture, fixtures, and equipment, among other types of going-concern property; f.) the appraiser's failure to address the impact of ongoing construction at the property; g.) the appraiser's failure to recognize that gaming income had not yet stabilized at the subject property; h.) the appraiser's use of an improper income approach, given the lack of stabilized income at the property; i.) the appraiser's reliance on improper and unsupported deductions which the appraiser made from the business value of the entity to arrive at his value of the real estate; and j.) the appraiser's failure to properly determine market value for his deductions of the value of furniture and fixtures and equipment and the gaming license.

7. The Board of Tax Appeals acted contrary to Ohio law, acted unreasonably, abused its discretion and made factual findings without evidentiary support in the record when it failed to recognize or even consider the steps that were undertaken by the board of education's appraisers to exclude business value from their valuation of the Thistledown real estate for tax years 2014 and 2015.

8. The Board of Tax Appeals committed reversible error, abused its discretion, and acted contrary to Ohio law when it failed to follow applicable Ohio Supreme Court precedent which held that the

valuation approach implemented by the board of education's appraisers was a lawful method for valuing the subject property (see *Harrah's Ohio Acquisition Co[.], L.L.C. v. Cuyahoga Cty. Bd. of Rev[ision]*, [154 Ohio St.3d 340], 2018-Ohio-4370, [114 N.E.3d 192].

9. The Board of Tax Appeals committed reversible error, abused its discretion, and acted contrary to Ohio law when it failed to follow or even address the board's own on-point precedent in support of the approach implemented by the board of education's appraisers, as established in *Northfield Park Associates v. Summit County B[d.] of Revision*, BTA Nos. 86-A-277, 86-A-278, 86-H-1491, 87-G1390, 87-B-1391, 87-H-1392, 87-D-1393, 87-B-1398, 87-A-1399, 87-C-1400 and 87-G-1401 (January 25, 1991).

10. Contrary to its obligations under Ohio law to explain the basis for its findings, the Board of Tax Appeals committed reversible error in failing to explain the basis for its determination that the property owner's appraiser's "opinions of value are the most probative of the subject property's values on the relevant tax lien dates."

11. The Board of Tax Appeals committed reversible error, abused its discretion, and acted contrary to Ohio law when it failed to follow Ohio Supreme Court precedent established in *Harrah's*[, 154 Ohio St.3d 340], 2018-Ohio-4370, [114 N.E.3d 192], which approved the valuation method used by the board of education's appraiser.

12. The Board of Tax Appeals acted contrary to Ohio law, acted unreasonably, abused its discretion and made factual findings without evidentiary support in the record when it failed to consider and weigh the board of education's appraisal testimony against the property owner's appraisal testimony and other evidence in this case in any "meaningful way," as the Ohio Supreme Court had required the board of tax appeals to do in the prior case of *Harrah's*[, 154 Ohio St.3d 340], 2018-Ohio-4370, [114 N.E.3d 192].

{¶ 2} The BOE organizes its twelve assignments of error into two issues. The BOE explains that the first issue encompasses assignments of error numbers 1, 2, 7, 8, 9, 11, and 12, and the second issue encompasses assignments of error numbers 3, 4, 5, 6, 10, and 12. We note that the BOE includes the twelfth assignment

of error in both issues, but we address it in our analysis of the BOE's first issue. The BOE frames its two issues as follows:

1. The January 6, 2020 decision of the BTA regarding the value of the subject property for tax years 2014 and 2015 should be vacated by this honorable court, since the BTA's decision is based on an incorrect legal conclusion that the BOE's income approach was "legally flawed," based upon its use of percentage rent. Because this legal conclusion regarding percentage rent is contrary to longstanding Ohio case law, including the Ohio Supreme Court's on-point decision in *Harrah's*[, 154 Ohio St.3d 340], 2018-Ohio-4370, [114 N.E.3d 192], and contrary to longstanding appraisal practice, the legal conclusion should be rejected by this court.

2. Even if this honorable court finds nothing objectionable in the BTA's complete rejection of the BOE's appraisal evidence, based upon the BTA's legal conclusion that the BOE's percentage-rent income approach was "legally flawed," the BTA's conclusion that the property owner's appraisal was "most probative" despite its demonstrated flaws does not comply with the BTA's obligation to explain the basis for its findings and does not provide a rational justification for the ultimate decision to utilize the property owner's flawed appraisal evidence to set the value of the subject property.

{¶ 3} Finding no merit to the assignments of error, we affirm the BTA's decision.

## I. Procedural History and Factual Background

{¶ 4} The subject property, located at 21501 Emery Road, North Randall, is the site of plaintiff-appellee's, Thistledown Racetrack L.L.C.'s, racino. The property consists of two parcels in Warrensville Heights and North Randall, but it is in the Warrensville Heights school district. The two parcels encompass over 128 acres and include an 8-story grandstand, a mile-long oval racetrack, 20 barns, and other structures. The value of the property has been subject to tax appeals for three prior tax years, most recently regarding tax year 2013, as discussed in more detail below.

{¶ 5} For tax year 2014, the Cuyahoga County fiscal officer valued the property at $23,157,100. The BOE filed a complaint with the Cuyahoga County Board of Revision ("BOR") seeking an increase in value to $48 million for tax year 2014. For tax year 2015, the Cuyahoga County fiscal officer valued the property at $32 million, and both Thistledown and the BOE filed complaints with the BOR seeking changes in that valuation. For tax year 2015, the BOE sought an increase in value to $49 million, and Thistledown sought a decrease in value to $25.2 million.

{¶ 6} The BOR held a consolidated hearing on the complaints regarding tax years 2014 and 2015. Thistledown relied on the appraisal reports and testimony of David Sangree, who is a certified appraiser in Ohio and a CPA. The BOE relied on the appraisal reports and testimony of Douglas Bovard, who is a real estate appraiser and consultant. After consideration of the testimony and evidence, the BOR declined to make a change to the property's valuation for either tax year. Thistledown and the BOE both appealed to the BTA. Thistledown moved to consolidate the hearings for tax years 2014 and 2015, which the BTA granted.

{¶ 7} At the BTA hearing regarding tax years 2014 and 2015, Thistledown presented Sangree's testimony and appraisal reports. In both reports, Sangree used three appraisal methods: an income-capitalization approach, a sales-comparison approach, and a cost approach. He relied primarily on his income-capitalization approach and used the other two approaches to confirm his conclusion. He testified that he believed the value of the property was $27 million as of January 1, 2014, and

$25.2 million as of January 1, 2015.  He explained that the value decreased in 2015 due to competition from other casinos.

**{¶ 8}**   With the income-capitalization approach, Sangree valued the entire property as a "going concern," which he explained represents the "property as an operating entity."  He used the direct-capitalization technique of estimating the net income in a given year.  He then subtracted the value attributable to property other than real property, including the value of the gaming license and personal property.  Under this approach, his valuation of the real estate for tax year 2014 was $27 million, and his valuation for tax year 2015 was $25.2 million.

**{¶ 9}**   For the sales-comparison approach, Sangree used sales of properties that he thought were similar and made quantitative adjustments to the sales to determine an adjusted range for price per square foot.  For both tax years, he relied on five sales that occurred between 2012 and 2013.[1]  After using this method to determine the value of the property as a going concern, he again subtracted the value of the gaming license and personal property.  Under this approach, his valuation for tax year 2014 was $26.6 million, and his valuation for tax year 2015 was $24.5 million.

**{¶ 10}** Under the cost approach, Sangree estimated the cost of the value of the land, added the estimated cost to construct the "improvements," and then subtracted a depreciation value from the improvements.  With this approach, he

---

[1] At the BTA hearing, Sangree explained that since completing his report for tax year 2014, he discovered that his data for two of these sales were incorrect.  But he explained that the mistakes did not greatly affect his overall analysis and conclusions.

valued the property at $28.2 million for tax year 2014 and at $25 million for tax year 2015. Sangree then reconciled the three approaches he used, giving primary weight to the income-capitalization approach, to arrive at the final valuation of $27 million for tax year 2014 and $25.2 million for tax year 2015.

{¶ 11} The BOE presented two appraisal review reports and testimony from Kathleen McGee, who reviewed Sangree's appraisals. McGee is an attorney and a certified general appraiser in Ohio. McGee testified that Sangree's method of determining real estate value from the going-concern value is a proper method, but it is "fraught with errors," and it would be her "last choice." She explained that this method requires the appraiser to make many subjective judgments and requires the business to have stabilized income and expenses, which Thistledown did not have. McGee outlined errors in Sangree's appraisals, including reliance on incorrect acreage, unreliable data sources, and historical costs for personal property instead of market value. McGee testified that she found Sangree's appraisals to be unreliable.

{¶ 12} The BOE also presented Bovard's appraisal reports and testimony. Bovard testified that the value of the property was $48 million as of January 1, 2014, and $49 million as of January 1, 2015. For tax year 2014, he relied on the income-capitalization approach, and he used the cost approach as a "check" on his results. For tax year 2015, he used the income-capitalization approach, the cost approach, and the sales-comparison approach as a "check" on his results from the other two methods.

**{¶ 13}** Under the income-capitalization approach for both tax years, Bovard used both the direct-capitalization technique and the discounted-cash-flow technique. For the discounted-cash-flow analysis, Bovard estimated the property's anticipated cash flow and then subtracted from that value a rate reflecting perceived risks of a hypothetical investor. He based this analysis on the assumption that the property would be leased to a racetrack or casino operator at market rent. He explained that the rent on this type of lease would be based on a percentage rate of a racino's "wagering handles," including the wagering handles from live races on the Thistledown track, Thistledown races simulcast to other betting facilities, races from other facilities simulcast to Thistledown, and revenues from video lottery terminals. For tax year 2014, Bovard relied on leases from 1986 to 1996 to estimate what the percentage rate would be due to a lack of more recent leases of racetracks and casinos. For tax year 2015, he relied on the leases from 1986 to 1996 as well as more recent leases from 2007 to 2016. With this method, he valued the property at $47.8 million for both tax years 2014 and 2015.

**{¶ 14}** For the income-capitalization approach with the direct-capitalization technique, Bovard relied on capitalization rates for net leases. He also relied on recent sales of triple-net-leased properties in Cuyahoga County. With this method, he calculated that the property's value was $48.5 million for tax year 2014 and $50 million for tax year 2015.

**{¶ 15}** For the cost approach, Bovard valued the land "as vacant," added the estimated value of the improvements, and subtracted the depreciation from the

improvements. Under this approach, he valued the property at $48 million for tax year 2014 and $48.5 million for tax year 2015.

{¶ 16} For tax year 2015, Bovard used the sales-comparison approach "as a check upon the reasonability of the conclusions of the other approaches to value." He relied on three sales of properties that permitted casino gambling to conclude that the property would be purchased for a price range of $43 million to $79 million, and his valuations from the other methods fell within this range. Bovard explained that he relied primarily on the income-capitalization approach and put the "least weight" on the cost approach. After reconciling the approaches, he arrived at the final valuation of $48 million for tax year 2014 and $49 million for tax year 2015.

{¶ 17} Lastly, Thistledown presented two appraisal review reports and testimony from Joseph Pierce, who is a certified general appraiser and reviewed Bovard's appraisals. Pierce testified that he worked at the same company as Sangree and that he participated in appraising the property for tax years 2010 and 2012 — 2015. Pierce outlined errors in Bovard's appraisals, including an assumption of continued revenue growth, the use of rental percentages of facilities that had closed or were over a decade old, and the failure to properly analyze sales of other properties. He testified that Bovard's income-capitalization approach valued a lease-fee interest, rather than a fee-simple interest.

{¶ 18} On January 6, 2020, the BTA issued its decision. The BTA noted that although the review appraisal evidence from McGee and Pierce was new, Sangree's and Bovard's appraisal reports for tax years 2014 and 2015 were "substantially

similar to those presented in the tax year 2013 matter[.]"  The BTA explained that in the 2013 matter, it found Bovard's "approach to valuing the subject property, using an estimated lease rate based on the gaming revenue from the operations at the property, was improper as it reflected business value and failed to properly isolate the real property value[.]"  The BTA cited to its decision in the 2013 matter, in which it explained that while Bovard's approach to valuing the property by assuming it would be leased on a net basis is appropriate, he determined the lease rate "based on a percentage of the various types of revenue from the business conducted at the property," which reflected business value instead of realty value.  Therefore, in the 2013 matter, the BTA rejected Bovard's income approach "in its entirety."  Because Bovard used the same approach for tax years 2014 and 2015, the BTA again found "his analysis legally flawed" and "reject[ed] his income analyses."

{¶ 19}  The BTA explained Bovard's other valuation methods, noting that he put little weight on his cost approach and that he did not use the sales-comparison approach for tax year 2014.  The BTA acknowledged that Bovard used the sales-comparison approach for tax year 2015 but observed that he "provided little analysis of the sales" and that he considered the approach as a "check" on his other valuations.

{¶ 20}  The BTA also outlined Sangree's appraisals and found his opinions to be "the most probative."  It adopted his valuations of $27 million for tax year 2014 and $25.2 million for tax year 2015.  The BOE appeals this judgment.

## II.  Standard of Review

**{¶ 21}** An appellate court reviews a decision of the BTA to determine whether it is reasonable and lawful.  R.C. 5717.04; *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, ¶ 13; *Cousino Constr. Co. v. Wilkins*, 108 Ohio St.3d 90, 2006-Ohio-162, 840 N.E.2d 1065, ¶ 10. "It is well settled that [an appellate] court will defer to factual determinations of the BTA if the record contains reliable and probative support for them."  *Strongsville Bd. of Edn. v. Wilkins*, 108 Ohio St.3d 115, 2006-Ohio-248, 841 N.E.2d 303, ¶ 7; *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 152, 648 N.E.2d 483 (1995).

## III.  The BTA's Rejection of Bovard's Income-Capitalization Approach

**{¶ 22}** The BOE argues in its first issue, which encompasses assignments of error numbers 1, 2, 7, 8, 9, 11, and 12, that the BTA erred when it rejected Bovard's appraisals because it improperly found his income-capitalization approach to be "per-se unlawful."  The BOE contends that this decision was a legal conclusion that we must review de novo.

**{¶ 23}** Thistledown argues that collateral estoppel bars this court from considering this issue because we already addressed it in the BOE's appeal regarding tax year 2013, *Harrah's Ohio Acquisition Co., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga No. 108765, 2020-Ohio-4214.[2]  The BOE maintains that collateral estoppel does not apply because this case involves different tax years,

---

[2] Although the plaintiff in the case for tax year 2013 was Harrah's Ohio Acquisition Co., L.L.C., instead of Thistledown, the property at issue is the same as the property in this case.

a different appraisal, different testimony, new review appraisal evidence, and a new BTA decision. A brief discussion of the proceedings for tax year 2013 is necessary.

## A. Proceedings for Tax Year 2013

{¶ 24} For tax year 2013, the Cuyahoga County fiscal officer valued the property at $37,658,000, and both the BOE and the property owner (then Harrah's Ohio Acquisition Company, L.L.C.) filed complaints with the BOR seeking changes in that valuation. *Harrah's*, 8th Dist. Cuyahoga No. 108765, 2020-Ohio-4214, at ¶ 3. The BOR declined to change the valuation, and the BOR and the property owner appealed to the BTA. *Id.* at ¶ 4. The property owner presented Sangree's appraisal and testimony to support a value of $22 million, and the BOE presented Bovard's appraisal and testimony to support a value of $44.5 million. *Id.* at ¶ 4-9. Bovard used the income-capitalization approach by assuming that the property would be leased to a racino operator and that the rent would be calculated as a percentage rate of a racino's wagering handle. *Id.* at ¶ 8. The BTA found that Bovard determined a "leased-fee value" instead of the value for the "fee simple estate." *Harrah's Ohio Acquisition Co., L.L.C., v. Cuyahoga Cty. Bd. of Revision,* BTA Nos. 2014-4596, 2014-4810, 2014-4818 and 2014-4896, 2016 Ohio Tax LEXIS 585, 18 (Mar. 17, 2016). The BTA therefore rejected Bovard's appraisal and adopted Sangree's valuation. *Id.*

{¶ 25} The BOE appealed the BTA's decision to the Ohio Supreme Court. *Harrah's Ohio Acquisition Co., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 154 Ohio St.3d 340, 2018-Ohio-4370, 114 N.E.3d 192. The Ohio Supreme Court held that the

BTA erred when it refused to consider Bovard's appraisal because his method of assuming the property would be leased was not defective as a matter of law. *Id.* at ¶ 27. It remanded the matter for the BTA to consider Bovard's appraisal. *Id.*

{¶ 26} On remand, the BTA outlined Bovard's appraisal but again rejected it. *Harrah's Ohio Acquisition Co., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, BTA Nos. 2014-4596, 2014-4810, 2014-4818 and 2014-4896, 2019 Ohio Tax LEXIS 1278, 12 (June 7, 2019). The BTA found that although Bovard's approach of valuing the property as if it were leased was appropriate, his method for calculating the lease rate was not. *Id.* at 12. It explained that after the Ohio Supreme Court's remand, the court decided *HCP EMOH, L.L.C. v. Washington Cty. Bd. of Revision*, 155 Ohio St.3d 378, 2018-Ohio-4750, 121 N.E.3d 370, in which it rejected an appraiser's method for calculating net lease rates based on a percentage of the net operating income of the business. *Id.* at 11. The BTA noted that the Ohio Supreme Court had relied on *Higbee Co. v. Cuyahoga Cty. Bd. of Revision*, 107 Ohio St.3d 325, 2006-Ohio-2, 839 N.E.2d 385, for the principle that the value of real property "cannot be made to vary depending on the success or lack thereof of the business located on the property." *Id.* at 11-12. The BTA found that Bovard's method of calculating the lease rate as a percentage rate from Thistledown's wagering handles ran "afoul" of the principles from *HCP* and *Higbee*. *Id.* at 12.

{¶ 27} The BOE appealed the BTA's decision to this court, arguing in part that the BTA's decision violated the Ohio Supreme Court's remand instructions because the BTA again rejected Bovard's appraisal. *Harrah's*, 8th Dist. Cuyahoga

No. 108765, 2020-Ohio-4214.  We found that the BTA fulfilled the Ohio Supreme Court's mandate and affirmed the BTA's decision.  *Id.* at ¶ 35.

## B. Collateral Estoppel

{¶ 28} Collateral estoppel, or issue preclusion, prevents relitigation of an issue that has been actually and necessarily litigated and determined in a prior action.  *Fort Frye Teachers Assn. v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998).  Collateral estoppel applies when three requirements are met:  "the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action."  *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917 (1994), citing *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969), paragraph two of the syllabus.  "The essential test in determining whether the doctrine of collateral estoppel is to be applied is whether the party against whom the prior judgment is being asserted had full representation and a 'full and fair opportunity to litigate that issue in the first action.'"  *Cashelmara Villas Ltd. Partnership v. DiBenedetto*, 87 Ohio App.3d 809, 813, 623 N.E.2d 213 (8th Dist.1993), quoting *Hicks v. De La Cruz*, 52 Ohio St.2d 71, 74, 369 N.E.2d 776 (1977).

{¶ 29} In the context of valuing real property, "the ultimate issue of tax value in one tax year does not constitute the 'same issue' as the ultimate issue of tax value in a different year."  *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 16-17.  However, the

"determination in an earlier year of a discrete factual/legal issue that is common to successive tax years may bar relitigation of that discrete issue in the later years." *Id.* at ¶ 17.

{¶ 30} The parties dispute whether the issue the BOE raises here is the same issue that was litigated for the 2013 tax year. In this case, the BOE argues that the BTA made an incorrect legal conclusion that Bovard's income approach was legally flawed. First, the BOE argues that this legal conclusion is contrary to the Ohio Supreme Court's decision in the 2013 tax year litigation because the Ohio Supreme Court found that (1) Bovard's appraisal methodology was not defective as a matter of law, (2) the methodology was approved by New York's highest court in *Saratoga Harness Racing v. Williams*, 91 N.Y.2d 639, 697 N.E.2d 164, 674 N.Y.S.2d 263 (1998), and (3) the BTA needed to consider Bovard's appraisal. *See Harrah's*, 154 Ohio St.3d 340, 2018-Ohio-4370, at ¶ 26-28. The BOE maintains that the BTA nonetheless failed to consider Bovard's appraisal both in this case and for tax year 2013. Second, the BOE contends that in rejecting Bovard's appraisal method, the BTA improperly relied on *HCP*, 155 Ohio St.3d 378, 2018-Ohio-4750, 121 N.E.3d 370, and *Higbee*, 107 Ohio St.3d 325, 2006-Ohio-2, 839 N.E.2d 385. Third, the BOE argues that Bovard's appraisal method is consistent with longstanding appraisal practice in Ohio, and the BTA erred in creating a per se rule rejecting it.

{¶ 31} Likewise, in the appeal regarding tax year 2013, the BOE made the same arguments to this court. It argued that the BTA rejected Bovard's appraisal method "based on an incorrect legal conclusion" that "is directly contrary to the clear

holding and remand instructions that were issued by the Ohio Supreme Court[.]" *Harrah's*, 8th Dist. Cuyahoga No. 108765, 2020-Ohio-4214, at ¶ 16. Specifically, the BOE maintained that the Ohio Supreme Court endorsed Bovard's appraisal methodology as a matter of law, that the method was approved by New York's highest court in *Saratoga Harness*, that the BTA failed to consider Bovard's appraisal, and that the BTA improperly relied on *HCP* and *Higbee*. *Id.* at ¶ 29, 33, 34. Therefore, we find that the BOE's first issue in this appeal was actually and directly litigated in the action regarding tax year 2013, satisfying the first element for collateral estoppel.

{¶ 32} Next, this court thoroughly addressed the parties' arguments in the appeal regarding tax year 2013. We found that the Ohio Supreme Court did not endorse Bovard's appraisal methodology in its entirety, that *Saratoga Harness* was not binding authority, that the BTA considered but rejected Bovard's appraisal on remand, and that *HCP* and *Higbee* properly "provided the BTA with insight in fulfilling the Supreme Court's directive on remand." *Id.* at ¶ 30-35. Accordingly, this court already "passed upon and determined" the BOE's first issue in this case, satisfying the second element for collateral estoppel.

{¶ 33} Lastly, the BOE, as the party against whom collateral estoppel is asserted in this case, was the appellant in the litigation regarding tax year 2013 and had a full and fair opportunity to litigate the issue in the prior action. The final requirement for collateral estoppel is therefore satisfied.

{¶ 34} The BOE challenges the case that Thistledown cites for the elements of collateral estoppel, *Warrensville Hts. City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 152 Ohio St.3d 277, 2017-Ohio-8845, 95 N.E.3d 359. The BOE argues that *Warrensville Hts.* is distinguishable because that case involved the same bankruptcy sale that was the subject of the prior action. It contends that unlike in that case, this court is not faced with the same issue and facts because this case involves different tax years, a different appraisal, different testimony, a new review appraiser, and a new BTA decision.

{¶ 35} We disagree. The fact that the tax years are different is not relevant to whether there is a discrete factual or legal issue in common between the years. *See Olmsted Falls Bd. of Edn.*, 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, at ¶ 17. Even though the tax years at issue are not the same, Bovard's appraisals for tax years 2014 and 2015 are nearly identical to the appraisal he presented in 2013. Indeed, Bovard's appraisal for tax year 2014 is in the same report as his appraisal for tax year 2013. The BTA's decision in this case also explains that the BTA rejected Bovard's income-capitalization approach explicitly because it was "substantially similar" to the one presented in tax year 2013, and the BTA rejected the appraisal method in tax year 2013. Furthermore, the fact that the BOE presented new testimony and a new review appraiser does not change the relevant issue. *See Warrensville Hts.* at ¶ 10 (The presentation of additional evidence did not prevent the operation of collateral estoppel.).

{¶ 36} Accordingly, we find that the doctrine of collateral estoppel prevents the BOE from relitigating whether the BTA made an unlawful legal conclusion when it rejected Bovard's appraisal method. We therefore find no merit to the BOE's first issue and overrule the 1st, 2d, 7th, 8th, 9th, 11th, and 12th assignments of error.

## IV. The BTA's Reliance on Sangree's Appraisals

{¶ 37} In its second issue, which encompasses assignments of error numbers 3, 4, 5, 6, and 10, the BOE argues that the BTA failed to explain the basis for its finding that Sangree's appraisal was the "most probative." It contends that the BTA was not required to accept Sangree's appraisal just because it rejected Bovard's. The BOE maintains that it demonstrated flaws in Sangree's appraisal, and the BTA should have explained why it was rejecting the BOE's criticisms. The BOE argues that we are therefore not able to determine the reasonableness or lawfulness of the BTA's decision, and we must reverse and remand the matter for the BTA to explain its findings.

{¶ 38} The BTA has "the duty to state what evidence it considered relevant in reaching its determination." *HealthSouth Corp. v. Levin,* 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, ¶ 34. But "the BTA is *not* required to set forth formal findings of fact and conclusions of law." (Emphasis sic.) *Health Care Reit, Inc. v. Cuyahoga Cty. Bd. of Revision*, 140 Ohio St.3d 30, 2014-Ohio-2574, 14 N.E.3d 1009, ¶ 68, citing *Wolf v. Cuyahoga Cty. Bd. of Revision*, 11 Ohio St.3d 205, 206, 465 N.E.2d 50 (1984).

{¶ 39} The BOE relies on *Cleveland Pub. Library v. Cuyahoga Cty. Budget Comm.*, 28 Ohio St.3d 390, 504 N.E.2d 421 (1986), and *Howard v. Cuyahoga Cty. Bd. of Revision*, 37 Ohio St.3d 195, 524 N.E.2d 887 (1988), for the proposition that the BTA's failure to properly explain its findings is reversible error. In *Cleveland Pub. Library*, the BTA allocated certain property tax funds among public libraries without offering any factual findings to support its allocation, and the Ohio Supreme Court found it could therefore not review the BTA's decision for reasonableness or lawfulness. *Id.* at 394. In *Howard*, the BTA heard evidence of three different property values but set a value different from all three without any explanation for how it reached that figure, and the Ohio Supreme Court found it was unable to review whether the decision was reasonable or lawful. *Id.* at 197.

{¶ 40} This case is distinguishable from *Cleveland Pub. Library* and *Howard* because the BTA did explain what evidence it considered relevant to its determination: Sangree's appraisals. This case is more like *Health Care Reit,* 140 Ohio St.3d 30, 2014-Ohio-2574, 14 N.E.3d 1009, at ¶ 70, in which the lead opinion found that the BTA properly set forth the basis for its decision with the statement, "we find Mr. Racek's opinion of value more persuasive." The court explained that the "BTA could have explained additional aspects of its reasoning, but its failure to do so does not necessitate reversal. The record is clear as to which evidence the BTA found more persuasive, so we are able to review the BTA's decision without remanding for additional explanation." *Id.* Here, the BTA likewise could have explained why it was rejecting the BOE's criticisms, but its failure to do so does not

require us to reverse. The BTA's explanation is sufficient to allow us to review its decision for reasonableness and lawfulness.

{¶ 41} The BOE contends that Sangree's appraisal is flawed because (1) Sangree is not qualified to conduct a going-concern valuation, (2) Sangree relied on the flawed assumption that the value of the going concern is equal to the sum of the value of its individual parts, and (3) Sangree used "erroneous, unreliable, and misleading data." The BOE is asking us to review Sangree's credibility and the weight to be given to the evidence of value he presented. We review "the BTA's determination of the credibility of witnesses and the weight to be given their testimony" for abuse of discretion, which requires a finding of "an arbitrary or unconscionable attitude below." *NWD 300 Spring, L.L.C. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 193, 2017-Ohio-7579, 87 N.E.3d 199, ¶ 14.

{¶ 42} Although the BOE's criticisms of Sangree's appraisals give reasons why the BTA could have decided to give less weight to Sangree's valuations, we do not find that the BTA had an unreasonable or unconscionable attitude in relying on Sangree's evidence. In its January 6, 2020 decision, the BTA outlined all the appraisal evidence and explained why it was rejecting Bovard's appraisals. The BTA acknowledged that the BOE criticized Sangree's appraisals "in several respects." It explained that subjective judgments are inherent in the appraisal process but that it was looking for an opinion that was "probative," not "perfect." The BTA stated that it found Sangree's opinions of value to be the "most probative, despite the BOE's criticisms." The BTA then adopted Sangree's valuations of the property for tax years

2014 and 2015.  We therefore find that the BTA did not abuse its discretion and that its decision was reasonable and lawful.

**{¶ 43}** Accordingly, we find no merit to the BOE's second issue, and we therefore overrule the 3d, 4th, 5th, 6th, and 10th assignments of error.

**{¶ 44}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Ohio Board of Tax Appeals to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR